```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF ALABAMA
                     SOUTHERN DIVISION

REGINALD FOXX,                      *
                                    *
     Plaintiff,                     *
                                    *
vs.                                 *   CIVIL ACTION 08-00403-KD-B
                                    *
MICHAEL J. ASTRUE,                  *
Commissioner of                     *
Social Security,                    *
                                    *
     Defendant.                     *
```

**REPORT AND RECOMMENDATION**

Plaintiff Reginald Foxx ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. This action was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Oral argument was held on June 18, 2009. Upon careful consideration of the administrative record the oral arguments and the memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

**I.  Procedural History**

Plaintiff protectively filed applications for DIB benefits and SSI benefits on December 14, 2004.  (Tr. 55-57, 191-195).

1

Plaintiff alleges that he has been disabled since November 24, 2004 due to injured discs in his back. (Tr. 68-69). Plaintiff's applications were denied at the initial level, and he filed a timely Request for Hearing. (Tr. 37-38, 44, 196-197). On March 15, 2006, Administrative Law Judge R. G. Goosens ("ALJ") held an administrative hearing, which was attended by Plaintiff and Reginald Freeman, a vocational expert. (Tr. 213-233). On November 24, 2006, ALJ Goosens issued an unfavorable decision finding that Plaintiff is not disabled. (Tr. 18-31). Plaintiff's request for review was denied by the Appeals Council ("AC") on June 9, 2008. (Tr. 4-7). The ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. Id. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

A. Whether the ALJ erred by assigning primary probative weight to the opinion of a non-acceptable non-medical source in determining Plaintiff's residual functional capacity ("RFC").

B. Whether the ALJ erred in acting as both judge and physician by substituting his own medical opinion for the opinion of a medical professional.

C. Whether the ALJ erred in failing to perform a function-by-function analysis of Plaintiff's limitations in assessing his RFC.

D. Whether the ALJ erred in failing to develop a full and fair record regarding vocational opportunities by failing to ask the vocational expert ("VE") whether the evidence provided the VE conflicts with the Dictionary of Occupational Titles.

**III. Factual Background**

Plaintiff was born on September 17, 1965 and was 40 years old at the administrative hearing. (Tr. 55, 74, 191, 217, 220). Plaintiff has a 12th grade education and past relevant work ("PRW") as a plaster, dry-wall, and stucco worker and painter. (Tr. 69-70, 72, 77-78, 93, 109, 217, 218). Plaintiff reported that he has not worked since November 24, 2004, when he re-injured discs in his back. (Tr. 69, 218). According to Plaintiff, he injured the discs in his back in 1995, and had back surgery to remove two discs in 1995. (Tr. 218-220). Plaintiff testified that his doctor advised him that he could no longer perform his past jobs due to the lifting and bending involved in those jobs. (Tr. 222-223).

Plaintiff also testified that his pain is constant and is made worse by sitting, driving, stooping and bending. (Tr. 223). Plaintiff reported that due to his pain, he can only walk for about 10 to 15 minutes, stand about 30 minutes, and sit about 15 minutes. Plaintiff also indicated that lifting a laundry basket with a few things in it causes pain to shoot through his legs. (Tr. 224-225). According to Plaintiff, he has tried different medications for his pain; however, nothing has helped so far. (Tr. 223).

The VE testified that an individual with the limitations set forth in the assessment completed by the Disability Specialist (Tr. 168-175) would be able to perform sedentary work existing in the the local and national economy. The VE listed representative jobs

as surveillance monitor, cashier in a parking lot, gate tender and service dispatcher. (Tr. 229-230). He further testified that an individual with the limitations described by Plaintiff in his testimony would have an RFC of less than sedentary, and would be unable to perform those jobs. (Tr. 231).

## IV.  Analysis

### A.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[1] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence

---

[1] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

### B.  Discussion

An individual who applies for Social Security disability benefits must prove his disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

---

[2] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1)

In case <u>sub</u> <u>judice</u>, the ALJ determined that Plaintiff met the non-disability requirements for a period of disability and disability insurance benefits and was insured for benefits through December 31, 2006. (Tr. 23). The ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date. <u>Id</u>. The ALJ concluded that while Plaintiff has the severe impairments of degenerative disc disease ("DDD"), mild broad-based annular bulge at L4-5, mild foraminal stenosis due to additional facet joint and ligamentum flavum hypertrophy, these impairments do not, individually or in combination, meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. <u>Id</u>. The ALJ found that Plaintiff's allegations regarding his limitations were not credible as to a disabling impairment. (Tr. 28). The ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform a wide range of work at the sedentary level, with limited

---

objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. <u>Id</u>. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999). <u>See</u> <u>also</u> <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

use of his lower extremities to push and/or pull foot controls, and no more than frequent balancing and kneeling, and no more than occasional climbing, stooping, crouching, crawling and overhead reaching. (Tr. 25). The ALJ further determined that Plaintiff cannot return to his past relevant work, but is capable of performing a significant number of occupations in the national economy. (Tr. 30).

The relevant[3] medical evidence of record is summarized as follows:

Plaintiff's records from Springhill Memorial Hospital Rehabilitation Institute from 1995 indicate that Plaintiff injured his back while lifting 40-pound boxes in his job as a repacker for Max Source Incorporated. A lumbar spine MRI dated June 30, 1995 showed mild bulging of three intervertebral discs at L4-5, without focal disc herniation, spinal stenosis or bony neural foraminal encroachment. (Tr. 116-123). Treatment notes from Alabama Physical Therapy Associates, P.A., dated May 10, 1995 through February 25, 1997 describe Plaintiff's treatment for low back injury that occurred on April 28, 1995. Those notes reflect that an MRI in September 1996 showed that Plaintiff had two pinched nerves, two ruptured discs and one bulging disc, and that he

---

[3]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

underwent a percutenous diskectomy on December 19, 1996. (Tr. 124-161).

Office notes from Roger M. Setzler, M.D., dated January 7, 2005, reflect that Plaintiff reported that he had surgery in 1995[4] for a herniated disc, and that a recent injury at work was causing him severe back pain. On physical exam, Plaintiff had positive bilateral straight leg raising, and x-rays of the lumbar spine showed some mild spurring and degeneration with narrowing of the L4-5 space, but not of the L5-S1 space. (Tr. 165). The x-ray impression lists lumbar pain, radiculopathy, degenerative joint disease and degenerative disc disease. (Tr. 165).

A lumbar spine MRI dated February 14, 2005 showed degenerative disc disease at L4-L5 and L5-S1, mild broad-based annular bulge at L4-L5, creating mild foraminal stenosis due to additional facet joint and ligamentum flavum hypertrophy, and mild broad-based annular bulge at L5-S1 with mild foraminal stenosis, right side greater than left. (Tr. 166-167, 188-189).

Dr. Setzler's treatment notes dated February 28, 2005 reference the above-referenced MRI results. Dr. Setzler prescribed a lumbar steroid epidural block at L4-5. (Tr. 164). On March 21,

---

[4] It is not clear from the medical records whether Plaintiff underwent surgery in 1995 or 1996. In some of the medical records and at the administrative hearing, Plaintiff indicated that he had surgery in 1995; however, some of the other medical records reflect that Plaintiff reported that he had surgery in 1996.(Tr. 124-161, 165)

2005, Dr. Setzler prescribed a new anti-inflammatory medication, Feldene[5] and Toradol[6] (Tr. 163).  On April 13, 2005 Dr. Setzler observed that Plaintiff was no better, and that he might need surgery.  He prescribed Toradol and Lortab[7], and referred Plaintiff to Tim S. Revels, M.D. for evaluation. (Tr. 162).

In a Physical Residual Functional Capacity Assessment dated April 22, 2005, Carol M. Davis, S.D.M., with the Social Security Administration, opined that Plaintiff can lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk two hours in an eight-hour workday, sit about six hours in an eight-hour workday, and occasionally push/pull with his lower extremities bilaterally.  She further limits Plaintiff to occasional climbing, stooping, crouching and crawling, frequent balancing and kneeling, and occasional overhead bilateral reaching.  She also opined that Plaintiff is unlimited in other manipulative activities, and that he has no visual, communicative, or environmental limitations. (Tr. 168-175).

Dr. Revels performed a consultative evaluation on April 27,

---

[5]Feldene is an anti-inflammatory used for the treatment of rheumatoid arthritis.  See, www.drugs.com.  (Last visited May 12, 2009).

[6]Toradol is an anti-inflammatory used for the short-term treatment of moderate to severe pain (usually after surgery).  See, www.drugs.com.  (Last visited May 12, 2009).

[7]Lortab is a narcotic drug used for the treatment of moderate to severe pain.  See, www.drugs.com.  (Last visited May 12, 2009).

2005. He noted that Plaintiff reported chronic back pain, and that he had multiple blocks with no sustained improvement.  He observed that the MRI on Plaintiff's lumbar spine showed degenerative disc at L4-L5, L5-S1.  He also noted no severe central or foraminal stenosis was appreciable on the MRI.  Dr. Revels recommended against surgery at that point due for a number of reasons: Plaintiff's young age, his fairly normal disc height, and the fact that while he has early degenerative disc developing, he has no herniation and no severe stenosis.  Dr. Revels encouraged Plaintiff to seek disability in order to qualify for Medicaid, and in turn, get into pain management. Dr. Revels also noted that if pain management was not successful, then an artificial disc could be considered; however, at that point, such discs were only approved for one level, and Plaintiff would need two. Dr. Revels diagnosed Plaintiff with lumbar degenerative disc disease, lumbar facet arthritis, lumbar radiculopathy, and lumbar low back pain. (Tr. 180-181).

Plaintiff returned to Dr. Setzler on May 2, 2005. Dr. Setzler reviewed Dr. Revels' findings with Plaintiff, and noted that surgery was out of the question, and that Plaintiff would be continued on a nonsurgical treatment plan. Plaintiff was diagnosed with lumbar degenerative disc disease, lumbar facet arthritis, lumbar radiculopathy and low back pain, and was prescribed

Neurontin.[8]  (Tr. 178).

Plaintiff was next seen by Dr. Setzler on February 24, 2006. Dr. Setzler diagnosed Plaintiff with severe lumbar degenerative disk disease with lumbar facet arthritis and lumbar radiculopathy. Dr. Setzler prescribed Lyrica[9] and Lortab, and observed that Plaintiff "probably ought to go ahead and seek disability." (Tr. 177).  In Dr. Setzler's notes dated March 10, 2006, he observed that Plaintiff was "somewhat better," on Lyrica, and that it seemed to be helping.  Dr. Setzler diagnosed Plaintiff with severe lumbar degenerative disease, lumbar facet arthritis and lumbar radiculopathy.  He also increased Plaintiff's Lyrica dosage to 150 b.i.d., and encouraged him to "stay active but to be careful." (Tr. 178-179).

   1.  **Whether the ALJ erred by assigning primary probative weight to the opinion of a non-acceptable non-medical source in determining Plaintiff's residual functional capacity ("RFC").**

Plaintiff argues that the ALJ erroneously assigned probative weight to the opinion of a non-acceptable non-medical source under Social Security Regulations 20 CFR §§ 404.1513, 404.1527(d), 416.913 and 416.927(d) in assigning Plaintiff's RFC.  Defendant argues that the ALJ is responsible for determining a Plaintiff's

---

[8]Neurontin is used to treat seizures and some types of pain. See, www.drugs.com.  (Last visited May 12, 2009).

[9]Lyrica is an anti-epileptic drug used to treat seizures and nerve pain. See, www.drugs.com.  (Last visited May 12, 2009).

RFC, and that the ALJ did so, based on all of the relevant evidence.

In assessing Plaintiff's RFC, the ALJ stated as follows:

The undersigned observes that the record has not contained any opinions from treating or examining physicians or other medical sources indicating that the claimant has been disabled from all work.

The undersigned further observes that the record has not contained any opinions from treating or examining physicians or other medical sources indicating that the claimant has had limitations more stringent than those determined in this decision. Given his allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctors or other medical sources. Yet a review of the record in this case revealed no such recommended restrictions. There is no medical opinion in file contrary to the established residual function capacity.

The claimant has not generally received the type of medical treatment one would expect for a totally disabled individual, as the treatment that he has received has been essentially routine and/or conservative in nature.

The claimant's use of medications has not suggested the presence of impairments which are more limiting than found in this decision. While the claimant has alleged various side effects from his use of medications such as chest pain or "feeling bad," the medical records, such as office treatment notes, have not corroborated those allegations and hence the allegations are rejected. It is noted that, in the most recent treatment notes from Dr. Setzler, the claimant has reported improvement with Lyrica. . . .

It is noted that the claimant testified that Dr.Setzler had recommended back surgery. However, this is not supported by records from either Dr. Setzler . . . or Dr. Revels. . . .

Although the claimant has described daily activities which are fairly limited, two factors weigh against considering these allegations to be strong evidence in

12

> favor of finding her disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to his medical conditions, as opposed to other volitional reasons, in view of the pertinent factors discussed in this decision.
>
> As noted and discussed above, there have been no acceptable examining or treating medical source opinions of record. Therefore, the specialized physical DDS medical source statement has been considered the most probative for purposes of establishing the RFC herein . . . corroborated by the underlying medical evidence.

(Tr. 28-29).

RFC is what an individual can still do despite his or her limitations. Social Security Ruling 96-8p: *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims.* ("SSR 96-8p"). It is the task of the ALJ to determine a claimant's RFC. See, e.g, Phillips v. Barnhart, 357 F.3d 1232, 1238-1239 (11th Cir. 2004). The RFC assessment must be based on all of the relevant evidence in the case such as: medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, and medical source statements. SSR 96-8p. These "medical source statements" may be submitted by an individual's treating source or other acceptable medical sources. Id. Additionally, Social Security Ruling 96-6p[10]

---

[10]*Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence* ("SSR 96-6p")

provides that findings of fact made by State agency medical consultants regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of non-examining sources at the administrative law judge and Appeals Council levels of administrative review.  SSR 96-6p.  The Ruling also provides that the medical opinions of such consultants must be considered, and that "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f).  The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987). However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).

Upon review, the undersigned finds that the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence. In determining Plaintiff's RFC, the ALJ focused on the fact that no doctor had placed any restrictions on Plaintiff, that Plaintiff had received conservative treatment, that Plaintiff reported some improvement when placed on Lyrica, and that no treating doctor offered any medical opinion regarding the severity of Plaintiff's

14

impairments.  The ALJ deemed the RFC completed by the S.D.M. as "most probative" of Plaintiff's RFC.  In so doing, he adopted the RFC assessments of the S.D.M.  The ALJ ignored the fact that while Plaintiff's treating physicians ruled out another surgery in the immediate future due to Plaintiff's age, and fairly normal disc height, Dr. Revels opined that Plaintiff was experiencing pain to such a degree that he needed pain management, and if that was not successful, an artificial disc could be explored.  The medical records also reflect while Plaintiff was prescribed a lumbar steroid epidural block at L4-5 in February 2005[11], a new anti-inflammatory medication in March 2005, and various other pain medications during the relevant period, he often reported no improvement. (Tr. 162-164). Additionally, during Plaintiff's February 2006 visit with Dr. Seltzer, Dr. Seltzer proscribed both Lyrica and Lortab and encouraged Plaintiff to seek disability. (Tr. 177).  At Plaintiff's last visit for which there are records, Dr. Seltzer, in March 2006,  increased Plaintiff's Lyrica dosage to 150 after Plaintiff reported that it provided some relief.  Dr. Seltzer also encouraged Plaintiff to "stay active but to be careful."  (Tr.179).

Based upon a review of the medical records, it is apparent that Plaintiff suffers from lumbar degenerative disc disease,

---

[11]In fact, Dr. Revel's notes indicate that Plaintiff has had multiple blocks with no sustained improvement.  (Tr. 180).

lumbar facet arthritis, lumbar radiculopathy, and lumbar low back pain. (Tr. 180-181). However, what is not clear from these medical records is what impact, if any, these impairments have on Plaintiff's ability to perform work. In the absence of any medical evidence on this important issue, the ALJ relied upon the assessment of the S.D.M., which the ALJ deemed the "most probative" of Plaintiff's RFC. The S.D.M.'s assessment does not constitute substantial evidence. While the findings of state agency medical consultants regarding the nature and severity of an individual's impairments must be considered and can be relied upon when they do not conflict with the opinions of examining sources, there is no evidence before the Court that Carol M. Davis, S.D.M., the person who completed the RFC assessment is a medical consultant whose opinion qualifies as a medical source opinion. "[A] SDM is not a medical professional of any stripe, and a finding from such an individual is entitled to no weight as a medical opinion, or to consideration as evidence from other non-medical sources." Bolton v. Astrue[12], 2008 U.S. Dist. LEXIS (M.D. Fla. May 12, 2008)(quoting Velasquez v. Astrue, 2008 U.S. Dist. LEXIS 64743 (D.C. Colo., Mar. 20, 2008)(internal quotation marks omitted.); Casey v. Astrue, 2008

---

[12]In Bolton, the Court noted that the Commissioner had represented to the Court that the Agency has been conducting a test in Florida, among other states, involving the use of a single decision maker who makes the initial disability determination without requiring the signature of a medical consultant.

U.S. Dist. LEXIS 47515 (S.D. Ala. June 19, 2008)( an RFC assessment completed by a disability specialist is entitled to no weight); Hall v. Astrue, 2007 U.S. Dist. LEXIS 95776 (S.D. Ala. Nov. 7, 2007) (holding that the opinion of a disability examiner "simply does not supply the substantial evidence needed to support the ALJ's determination".)

This is not a case in which the ALJ relied upon a medical consultant to review the medical evidence and offer an opinion about Plaintiff's functional limitations.  This is a case that is devoid of any medical opinions regarding Plaintiff's functional limitations.  Because the ALJ's finding regarding Plaintiff's RFC is not supported by substantial evidence, this case must be remanded. Upon remand, a medical source should be consulted to assist the ALJ in determining Plaintiff's RFC assessment.

**V.   Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is recommended that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, is due to be reversed and remanded.

**DONE** this **26th day of August, 2009.**

                                      **/s/ SONJA F. BIVINS**
                             **UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  See 28 U.S.C. § 636(b)(1)©; Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **Opposing party's response to the objection.**   Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **Transcript (applicable where proceedings tape recorded)**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is

advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

                                                  **/s/ SONJA F. BIVINS**
                                        **UNITED STATES MAGISTRATE JUDGE**